## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARGARET PELAK,

      Plaintiff,

v.                                                    Case No. 8:24-cv-2996-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

      Defendant.

_____

## OPINION AND ORDER[2]

### I.   Status

Margaret Pelak ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of mental conditions including depression and anxiety, and physical conditions including hypertension, back pain, and migraines. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"),

---

[1]     Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

filed February 27, 2025, at 70, 75, 248. Plaintiff protectively filed an application for DIB on May 9, 2022, alleging a disability onset date of May 15, 2019.[3] Tr. at 193-94. The application was denied initially, Tr. at 69, 70-74, 87-90, and upon reconsideration, Tr. at 75-79, 80, 98-100.[4]

On May 1, 2024, an Administrative Law Judge ("ALJ") held a hearing,[5] during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 46-68. On June 18, 2024, the ALJ issued a Decision finding Plaintiff not disabled through September 30, 2022, the date Plaintiff was last insured for DIB (the "DLI"). See Tr. at 10-19.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. See Tr. at 4-5 (Appeals Council exhibit list and order), 31-32 (request for review), 394-95 (brief and cover letter). On November 6, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On December 30, 2024, Plaintiff commenced this action under

---

[3]    Although actually completed on May 19, 2022, see Tr. at 193, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as May 9, 2022, see, e.g., Tr. at 70, 75.

[4]    Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5]    The hearing was held via telephone with Plaintiff's consent. Tr. at 48, 150-52, 178.

42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues: 1) the residual functional capacity ("RFC") assigned by the ALJ "failed to appropriately account for Plaintiff's moderate limitations in concentration, persistence, and maintaining pace"; and 2) the RFC "lacked the support of expert opinion evidence, thereby compromising the credibility of the limitations the ALJ determined Plaintiff was capable of performing." Plaintiff's Memorandum of Law (Doc. No. 17; "Pl.'s Mem."), filed May 30, 2025, at 7, 12 (emphasis omitted). On June 16, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. Then, on July 25, 2025, Plaintiff's Reply to Defendant's Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Reply") was filed.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further development of the record as it relates to opinion evidence. On remand, this development of opinion evidence may impact the Administration's consideration of the remaining issue on appeal. For this reason, the Court need not address the parties' arguments on those issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because

they were likely to be reconsidered on remand); <u>Demenech v. Sec'y of the Dep't of Health & Human Servs.</u>, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; <u>see also</u> <u>Simon v. Comm'r, Soc. Sec. Admin.</u>, 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

---

[6]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

Here, the ALJ followed the five-step inquiry. <u>See</u> Tr. at 12-19. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 15, 2019 through her [DLI] of September 30, 2022." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff through the DLI "had the following severe impairments: adjustment disorder with anxiety." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff through the DLI "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following RFC through the DLI:

> [Plaintiff could] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can concentrate, persist, and maintain pace performing simple and detailed job tasks.

Tr. at 15 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff through the DLI "was unable to perform any past relevant work" as a "Nurse assistant," a "Distribution manager," and an "Adjustment clerk." Tr. at 17 (emphasis omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 18-19. After considering Plaintiff's age ("61 years

old . . . on the [DLI]"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found Plaintiff through the DLI could have performed "jobs that existed in significant numbers in the national economy," Tr. at 18 (emphasis and citations omitted), such as "Dish washer," "Motor vehicle assembler," and "Floor waxer," Tr. at 19. The ALJ concluded Plaintiff "was not under a disability . . . from May 15, 2019, the alleged onset date, through September 30, 2022, the [DLI]." Tr. at 19 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959

F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff contends that the RFC assigned by the ALJ "lacked the support of expert opinion evidence" and therefore cannot stand. Pl.'s Mem. at 12-14. Defendant, responding, concedes that "the record included no opinion evidence" but argues that the RFC was "based on the record as a whole" and should be upheld. Def.'s Mem. at 9-10.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)); see Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 (11th Cir. 2015) (citing Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)). This requires an ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Henry, 802 F.3d at 1267 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "Nevertheless, the

- 7 -

claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)).

While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281). To remand for failure to develop evidence, the record must contain "evidentiary gaps which result in unfairness or clear prejudice." Henry, 802 F.3d at 1267 (quoting Brown, 44 F.3d at 935).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990)

(stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, it is undisputed that the record does not contain any medical opinion regarding Plaintiff's functioning. The ALJ wrote: "There are no opinions that require evaluation for persuasiveness because the State agency psychological and medical consultants at the initial and reconsideration levels all reported that the evidence was insufficient to support an opinion regarding any limitations caused by [Plaintiff's] impairments." Tr. at 17 (citing Exs. 2A and 3A, located at Tr. at 70-74, 75-79).

The physical medical consultant at the initial level, Christine Booth M.D., wrote specifically that she "Need[ed] a recent detailed physical exam covering quantified ROM, quantified strength, gait, station, sensory, SLRs, [and] DTRs, to evaluate." Tr. at 72. Dr. Booth further wrote "CE ordered," Tr. at 72, which appears to denote that a consultative examination had been ordered. The mental consultant, George Grubbs, Psy.D., wrote simply: "Claim insufficient d/t FTC." Tr. at 73. These findings were all repeated at the reconsideration levels, with the reconsideration physical consultant, Prianka Gerrish M.D., noting that Plaintiff "broke exam" and was not responding "to attempts to contact" and was failing "to communicate/cooperate." Tr. at 77. The mental consultant on reconsideration, Yamir Laboy, Psy.D., upheld the insufficient evidence finding

- 9 -

and further noted that there was "no MH evidence for 12 months prior to [DLI]." Tr. at 77-78.

The administrative transcript contains notations indicating that unspecified "notices" sent to Plaintiff from the SSA via the United States Post Office had been "returned/forwarding expired." Tr. at 183.[7] Correspondence sent to the SSA by Plaintiff's representative indicates that at some point in the administrative process, Plaintiff moved and obtained a new address. Tr. at 153.

At the hearing, the ALJ told Plaintiff's counsel that she "really need[ed] a medical source statement as of September 30, 2022" and asked if counsel was "expecting to get one of those or not?" Tr. at 50. In response, counsel stated, "No, I think [Plaintiff] asked them, and they refused to give one." Tr. at 50. Counsel clarified Plaintiff had asked "[t]he doctors at Evara," Tr. at 50, which evidently is Plaintiff's primary care provider, see Tr. at 770-883 (records).

The undersigned finds the ALJ erred by not fully developing the record, and Plaintiff was clearly prejudiced as a result. It is quite apparent that the reviewing consultants and the ALJ determined that further evidence was needed to properly evaluate the claim. Although Dr. Gerrish at the reconsideration level found that Plaintiff had "broke exam," which the undersigned believes to mean that Plaintiff had not appeared for a scheduled

---

[7]    Plaintiff did return a phone call by an SSA representative regarding a hearing. Tr. at 184.

exam, the ALJ did not make this finding. Moreover, given that some SSA correspondence was being returned as undeliverable, and in the absence of any other factual findings by the ALJ that would shed light on the issue of whether Plaintiff failed to appear, the undersigned cannot determine why the examination did not occur as ordered. Judicial review is frustrated in this regard.

The ALJ did ask about Plaintiff's treating providers providing an opinion as to Plaintiff's functioning, but evidently they refused to do so. See Tr. at 50. This refusal is all the more reason why the originally-ordered physical consultative examination should have been revisited (if appropriate in light of whatever history had transpired in relation to it). Moreover, the ALJ ultimately found Plaintiff only has a severe mental impairment—not a physical one—but it does not appear that a consultative mental evaluation was ordered by the state-agency evaluators. And, obviously, one was never accomplished. The matter must be reversed and remanded for further development of opinion evidence as to Plaintiff's functioning. See Etty v. Comm'r of Soc. Sec., No. 6:23-cv-2335-CEM-EJK, 2024 WL 5315337, at *3-4 (M.D. Fla. Dec. 18, 2024) (report and recommendation to reverse and remand when there was no "medical opinion evidence from the relevant time period, and the ALJ did not take any

steps to fill this evidentiary gap, such as by ordering a consultative examination"), adopted, 2025 WL 57617, at *1 (M.D. Fla. Jan. 9, 2025).[8]

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)      Develop the record as appropriate with opinion evidence regarding Plaintiff's functioning during the relevant period;

(B)      If necessary, address Plaintiff's other argument in this appeal; and

(C)      Take such other action as may be necessary to resolve this claim properly.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 30, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

---

[8]      The claimant in Etty "never responded to [the state agency medical consultants'] attempts to make contact" and so they were "unable to complete [the claimant's] medical assessment." Etty, 2024 WL 5315337, at *4 (citation omitted). Nevertheless, the Etty Court still determined, much the same way as the undersigned does here on this record, that "the ALJ has the basic duty to develop a full and fair record before making an RFC determination, and that was not done in this case." Id. (citation omitted).

kaw
Copies:
Counsel of Record